UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| HAROLD WITTROCK,<br><br>                    Plaintiff,<br>   vs.<br><br>FIRST NATIONAL BANK IN SIOUX FALLS and JACKSON NATIONAL LIFE INSURANCE COMPANY,<br><br>                 Defendants,<br>   vs.<br><br>CETERA INVESTMENT SERVICES, LLC, f/k/a Primevest Financial Services,<br><br>               Defendant and<br>               Third-Party Plaintiff,<br><br>   vs.<br><br>ROGER KAPPEL,<br><br>               Third-Party<br>               Defendant. | 4:17-CV-04149-KES<br><br><br>ORDER DENYING MOTION TO DISMISS |

Defendant First National Bank in Sioux Falls moves to dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Docket 16. Plaintiff, Harold Wittrock, opposes First National's motion. Docket 19. For the reasons that follow, the court denies First National's motion to dismiss.

# BACKGROUND[1]

The facts alleged in the amended complaint, accepted as true, are as follows:

Harold Wittrock is a 94 year old retired farmer from Rock Rapids, Iowa. In November 2007, Wittrock purchased an annuity from Jackson National Life Insurance Company with an initial value of approximately $654,000. Wittrock made a $5,000 withdrawal from the annuity at the beginning of each 2008 and 2009.

As part of its business practice, First National advertises to the public that it offers insurance, investment, and securities products and services. In order to offer these products and services, First National uses Cetera Investment Services to serve as a broker and dealer. First National uses its own employees, however, to work as investment advisors, investment representatives, and servicers of insurance and securities products, including annuities. Because these First National employees also work as investment representatives for Cetera, they are dual agents for both companies.

---

[1] On October 19, 2017, Wittrock filed a complaint, naming Cetera Investment Services and First National as defendants. Docket 1. On February 13, 2018—after First National and Wittrock finished briefing on First National's motion to dismiss the complaint—Wittrock, First National, Cetera, and third-party defendant Roger Kappel, filed a joint motion and stipulation for amendment of Wittrock's complaint. Docket 26. Under this joint motion and stipulation, the parties agreed that the court could treat First National's motion to dismiss, and the briefing related to that motion, as if it was made in response to the allegations in the amended complaint. *Id.* at 2. The court granted the joint motion and stipulation for amendment on February 14, 2018. Docket 28. Thus, consistent with the agreement of the parties and the court's order, the court will treat First National's motion to dismiss, and the briefing related to that motion, as if it was made in response to Wittrock's amended complaint.

Roger Kappel, Wittrock's son-in-law, is a customer of First National and lives in Dell Rapids, South Dakota. In June 2009, Kappel approached Margarita Bent and Jon Frick at First National's Dell Rapids branch about opening an investment account at First National for Wittrock's Jackson National annuity. On behalf of First National, Bent prepared a new account application and gave it to Kappel so Wittrock could sign the application. Kappel returned the application to First National but Wittrock's signature on the application was forged. Kappel also had Bent complete a request to change the servicing producer and representative for Wittrock's Jackson National annuity. Wittrock's signature on this form was also forged. Bent also served as the investment advisor, investment representative, and servicing producer for Wittrock's Jackson National annuity.

In order to hide the changes made to Wittrock's new First National account, Kappel changed the address on Wittrock's account so from that point forward all financial statements were sent to Kappel's address in Dell Rapids, South Dakota, and not to Wittrock's address in Rock Rapids, Iowa. No employee or representative from First National ever met with or contacted Wittrock to determine whether he actually desired to open an investment account or have First National represent him in his dealings with the Jackson National annuity. Further, no one from First National ever requested any documentation from Kappel, such as a power of attorney or other authorization from Wittrock, to demonstrate that Kappel had authority to open an investment account or to handle Wittrock's Jackson National annuity.

Beginning on June 9, 2009, Kappel began withdrawing funds from Wittrock's Jackson National annuity. Between June 9, 2009, and December 20, 2016, Kappel made 43 withdrawals from Wittrock's annuity in amounts ranging from $4,800 to $41,000. Each of these withdrawals was accomplished by Kappel forging Wittrock's signature on variable annuity partial withdrawal requests that First National processed. Once the partial annuity withdrawals were processed, the funds were dispersed in the form of checks that contained Wittrock's name. The checks were sent to Kappel's address in Dell Rapids, South Dakota, and Kappel would forge Wittrock's signature on the endorsement lines of these checks before depositing the checks into one of Kappel's personal accounts at First National. Through the use of these forged endorsements, Kappel was able to withdraw more than $639,000 from Wittrock's Jackson National annuity.

First National's employees were aware, through alerts issued by Jackson National, of the excess withdrawals made from Wittrock's annuity. First National's employees were also aware of the withdrawals and benefit changes made to Wittrock's annuity during the time when Kappel was forging the requests for withdrawal and was depositing the proceeds of the withdrawals from Wittrock's annuity into Kappel's personal account at First National. Yet between June 2009 and December 2016, no agent or employee from First National ever contacted Wittrock to determine whether he wanted to make the withdrawals from his Jackson National annuity or to determine whether the signatures on the withdrawal requests were actually those of Wittrock.

When Wittrock would inquire to Kappel about the status of his Jackson National annuity, Kappel would provide Wittrock with doctored statements showing funds in the annuity that were above the amounts that actually existed in the annuity. In February 2017, Wittrock began to suspect that there may be a problem with his Jackson National annuity so he contacted another representative to look into the matter. On March 6, 2017, Wittrock discovered that he had only about $5,000 remaining in his Jackson National annuity and was told that the rest of the money was gone. Wittrock never received the actual statements showing the status of his annuity because First National sent the statement to Kappel's address.

After discovering that his Jackson National annuity had been drained, Wittrock changed his account representative. Wittrock also contacted First National about the loss. First National replaced approximately $310,000 of the funds that had been paid to Kappel over Wittrock's forged endorsements. But for the unauthorized withdrawals from Wittrock's annuity, his annuity with Jackson National would have grown to have a value exceeding $800,000.

**LEGAL STANDARD**

A court may dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The court determines plausibility by considering the materials in the pleadings and exhibits attached to the complaint, by drawing on experience and common sense, and by viewing the plaintiff's claim as a whole. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012). Inferences are construed in favor of the non-moving party. *Id.* at 1129 (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)). The court may also "consider 'those materials that are necessarily embraced by the pleadings.'" *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 998 (8th Cir. 2016) (quoting *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014)). "Those materials include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" *Id.* (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820 (8th Cir. 2003)). A well-pleaded complaint should survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556 (internal quotations omitted); *accord Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014) (per curiam) ("Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they

do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

## DISCUSSION

Federal jurisdiction in this case is predicated on diversity of citizenship. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Here, the parties agree that South Dakota substantive law governs Wittrock's claims against First National. Thus, the court will apply South Dakota's substantive law and federal procedural law to resolve First National's motion to dismiss.

The amended complaint pleads three causes of action against First National: breach of fiduciary duty, negligence, and punitive damages. Docket 29 at 9-10. First National presents two primary arguments in support of its motion to dismiss the amended complaint. Initially, First National argues that Wittrock's claims are displaced by South Dakota's enactment of the Uniform Commercial Code (U.C.C.).[2] First National next argues that, even if the U.C.C. does not displace Wittrock's claims, it did not owe Wittrock a duty under South Dakota law. The court will address each of these arguments in turn.

## I.     Whether the U.C.C. Displaces Wittrock's Claims?

First National's primary argument in support of its motion to dismiss is its contention that South Dakota's enactment of the U.C.C. displaces

---

[2] South Dakota's enactment of the U.C.C. is found in SDCL Ch. 57A.

Wittrock's common law claims by creating a comprehensive remedial scheme that governs commercial transactions. Docket 17 at 3-6. The U.C.C. applies here, according to First National, because the core of Wittrock's allegations against First National stem from actions that it took in a commercial capacity, namely its acceptance of and processing of checks that contained Wittrock's forged endorsements.[3] *See id.* at 3-4. First National specifically cites SDCL §§ 57A-3-417, 3-420, and 4-208 as the sections of the U.C.C. that displace Wittrock's common law claims.[4] *Id.* at 4.

Having reviewed the arguments presented by the parties and relevant authorities, the court concludes that Wittrock's common law claims are not displaced by South Dakota's version of the U.C.C. Two key factors support the court's conclusion. First, the South Dakota Supreme Court has previously addressed the relationship between common law claims and SDCL Ch. 57A in concluding that "the UCC does not preclude a negligence action." *First Am. Bank & Trust, N.A. v. Farmers State Bank of Canton*, 756 N.W.2d 19, 26 (S.D. 2008). Thus, given that one of Wittrock's claims against First National is a negligence claim—and considering that this case is before the court on the

---

[3] First National also suggests that Wittrock should be precluded from bringing the instant lawsuit because he has already pursued his remedies under the U.C.C. and was able to recover approximately $310,000. *See* Docket 17 at 6 n.3 (indicating that Jackson National, acting on Wittrock's behalf, used SDCL §§ 57A-3-417 and 4-208 to recover more than $310,000 from First National); *see also* Docket 23 at 1-2 (implying that Wittrock's acknowledgment of the approximately $310,000 that he recovered from First National should serve as a reason to find that his current claims against First National are meritless).

[4] For reference, SDCL § 57A-3-420 addresses conversion of instruments. SDCL §§ 57A-3-417 and 4-208 both relate to presentment warranties.

basis of diversity jurisdiction—the South Dakota Supreme Court's decision in *First American Bank* is binding here as to Wittrock's negligence claim.

Second, although one purpose of the U.C.C. is to encourage the uniform application of law regarding commercial transactions, SDCL § 57A-1-103(a), which is codified within the U.C.C., recognizes that it does not displace all common law causes of action. SDCL § 57A-1-103(b) ("Unless displaced by the particular provisions of this title, the principles of law and equity . . . supplement its provisions."); *see also id.* cmt. 2 ("The Uniform Commercial Code was drafted against the backdrop of existing bodies of law, including the common law and equity, and relies on those bodies of law to supplement it provisions in many important ways."). The South Dakota Supreme Court has recently reaffirmed its recognition of this rule. *Stern Oil Co., Inc. v. Brown*, 908 N.W.2d 144, 151 (S.D. 2018) ("Where the UCC is silent, SDCL 57A-1-103 allows other 'principles of law and equity' to supplement the UCC's provisions."). Thus, because the U.C.C. was designed to supplement by the common law, only where a common law cause of action is "specifically displaced" by the U.C.C. will the South Dakota Supreme Court conclude that the cause of action is ineffective. *Maryott v. First Nat'l Bank of Eden*, 624 N.W.2d 96, 103 (S.D. 2001) ("The U.C.C. provides that our common-law is effective in commercial transactions unless specifically displaced by a particular Code section." (citing SDCL § 57A-1-103)); *see also First Am. Bank*, 756 N.W.2d at 26 (citing *Maryott*, 624 N.W.2d at 103).

Here, First National fails to cite a section of the U.C.C. that specifically displaces Wittrock's claims. In fact, as First National admits, the opposite is true. For example, the primary section of the U.C.C. that First National uses to argue that Wittrock's claims are specifically displaced by the U.C.C. is SDCL § 57A-3-420. Docket 17 at 3-6 (discussing U.C.C. § 3-420 and citing cases from other jurisdictions that rely on § 3-420 to conclude that negligence claims against banks are displaced by § 3-420). But as First National acknowledges, "[Wittrock] could not sue [First National] for conversion under UCC § 3-420 because he was never in physical possession of the checks." *Id.* at 5. Thus, given First National's own admission that Wittrock could not sue the bank under SDCL § 57A-3-420, it is clear that the statute does not specifically displace either of Wittrock's common law claims against First National.

The same is true for First National's argument that SDCL §§ 57A-3-417 and 4-208 specifically displace Wittrock's claims against the bank. Under these statutes, as First National acknowledges, the only entity that could pursue claims against First National is Jackson National. *Id.* at 6. And that is exactly what Jackson National did, which accounts for the approximately $310,000 that Wittrock already recovered. *Id.* n.3. Having reviewed the U.C.C. sections cited by First National, it is clear that First National has failed to cite a section that specifically displaces Wittrock's claims. Thus, under South Dakota law, displacement cannot serve as a basis for granting First National's motion to dismiss.

**II.    Whether First National owed a duty to Wittrock?**

First National's secondary argument in support of its motion to dismiss is that, even if the U.C.C. does not displace Wittrock's claims, First National did not owe Wittrock a duty. *Id.* at 6-8. First National makes this argument based on its reading of Wittrock's amended complaint, which, according to First National, alleges that he was not a customer of the bank. *See id.* at 8 (citing Docket 29 ¶¶ 25, 27). And because First National reads Wittrock's amended complaint as alleging that he was not a customer of the bank, it contends that his claims for negligence and breach of fiduciary duty fail under South Dakota law. *Id.* at 7 (citing *Gilbert v. United Nat'l Bank*, 436 N.W.2d 23, 27 (S.D. 1989)). Wittrock disagrees with First National's reading of his amended complaint and argues that First National either misperceives his claims or attempts to misstate his claims in order to gain dismissal. Docket 19 at 1-2.

Because this is a diversity case, the court will apply South Dakota's substantive law and federal procedural law to evaluate First National's motion to dismiss. *See Gasperini*, 518 U.S. at 427. Under federal procedural law, the court must accept Wittrock's allegations as true in order to determine whether Wittrock has stated a plausible claim for relief. *See Iqbal*, 556 U.S. at 678. The court also must view the amended complaint as a whole and construe all inferences in from the amended complaint in Wittrock's favor. *See Whitney*, 700 F.3d at 1128-29.

Wittrock's amended complaint alleges that he was a customer of First National Bank. *See* Docket 29 ¶ 41 (alleging that "First National failed to even

know [its] customer"); *id.* ¶ 19 (alleging that First National's employees opened an account in Wittrock's name); *id.* ¶¶ 20-23 (stating that First National failed to contact Wittrock to see if he actually wanted the bank to serve as the investment representative, servicing agent, and investment advisor for his Jackson National annuity). Thus, accepting Wittrock's allegations as true, the court need not address First National's argument that Wittrock was not owed a duty of care because he was a not a customer of the bank.[5] The only issue remaining for the court to determine, therefore, is whether First National owed Wittrock a duty under South Dakota law when it acted as his investment representative.

The South Dakota Supreme Court has not considered whether an individual, such as Wittrock, who had an investment account fraudulently opened in their name by a family member at a bank is owed a duty by the bank where the bank's employees served as investment representatives for the fraudulent investment account. Because the South Dakota Supreme Court has yet to decide this issue, this court must place itself in the position of the South Dakota Supreme Court and attempt to predict how that institution would likely

---

[5] As previously noted, First National cites specific portions of Wittrock's amended complaint in order to argue that the amended complaint alleges that that Wittrock was not a customer of the bank. Docket 17 at 8 (citing Docket 29 ¶¶ 25, 27). When these paragraphs are viewed along with the rest of the amended complaint, however, it is clear that the paragraphs *do not* allege that Wittrock was not a customer at First National. Thus, because the amended complaint, when read as a whole, alleges that Wittrock was a customer of the bank, the court need not address First National's argument that Wittrock is barred from claiming customer status under the doctrines of judicial admission and judicial estoppel. *See* Docket 23 at 5-6.

resolve the matter. *See Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011) ("Absent controlling [state supreme court] authority, a federal court sitting in diversity must attempt to predict what that court would decide if it were to address the issue."). In making this prediction, the court "may consider 'relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data.' " *Id.* (quoting *Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.*, 118 F.3d 1263, 1268 (8th Cir. 1997)).

Although the South Dakota Supreme Court has yet to consider a case directly on point, this court predicts that here, in light of its previous decisions, the South Dakota Supreme Court would impose a duty on a bank such as First National. For example, in *Dinsmore v. Piper Jaffray, Inc.*, 593 N.W.2d 41, 46 (S.D. 1999), the South Dakota Supreme Court recognized that securities brokers owe their clients fiduciary duties.[6] And recently, the South Dakota Supreme Court upheld a jury's finding that a financial advisor to a trust breached the fiduciary duties he owed to the trust by, after the creation of the trust, failing to disclose to the trustee potential defects regarding the creation and structure of the trust. *Bailey v. Duling*, 827 N.W.2d 351, 364 (S.D. 2013). Also, the South Dakota Supreme Court has long recognized that real estate brokers owe fiduciary duties to their clients. *See Hurney v. Locke*, 308 N.W.2d

---

[6] In recognizing a fiduciary relationship between securities brokers and their clients, the *Dinsmore* court specifically observed that it is the "repose of trust in the broker, that the broker will act in the client's best interest, [which] is a mark of fiduciary relationship." *Dinsmore*, 593 N.W.2d at 46.

764, 768 (S.D. 1981) (stating that "the relationship between real estate agent or broker and the principal is confidential and fiduciary" (citation omitted)).

Given the previous decisions from the South Dakota Supreme Court indicating that security brokers, financial advisors, and real estate brokers owe a duty to their clients, the court predicts that under the facts alleged here the South Dakota Supreme Court would conclude that First National owed a duty to Wittrock when it served as the investment advisor and servicer of his Jackson National annuity and of his First National account. Thus, First National's motion to dismiss based on lack of duty is denied.

## CONCLUSION

Having reviewed the two primary arguments presented by First National in support of its motion to dismiss, neither argument provides a basis for dismissing Wittrock's amended complaint. First, under South Dakota law, Wittrock's claims against First National are not displaced by South Dakota's enactment of the U.C.C. Second, the court predicts that under the facts alleged in the amended complaint, the South Dakota Supreme Court would conclude that First National owed Wittrock a duty when it served as the investment advisor and servicer for his Jackson National annuity and for his account with First National. Thus, it is

ORDERED that First National's motion to dismiss (Docket 16) is denied.

DATED May 11, 2018.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

14